IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Case No.  1:08-CV-502

ANDREW GIULIANI,

          Plaintiff,

   v.

DUKE UNIVERSITY AND ORRIN
DANIEL VINCENT, III,

   Defendants.

ANSWER

DUKE UNIVERSITY and ORRIN DANIEL VINCENT III ("COACH VINCENT"), answering the complaint, and, as defenses say:

<u>FIRST DEFENSE</u>

To the extent a response is required to the allegations under "Nature of the Case," this case has been filed by ANDREW GIULIANI as a result of his indefinite suspension as a Member of the DUKE UNIVERSITY Men's Golf Team.  His suspension was based on a series of actions by him that culminated in a physical assault on a teammate on 10 February 2008.  Prior to that assault, ANDREW GIULIANI had engaged in a number of actions that were disrespectful to

his teammates, that were in defiance of coaches, and that violated both the rules and the spirit of the game of golf.

The suspension of ANDREW GIULIANI was no secret, and was announced to both him and the other members of the DUKE UNIVERSITY Men's Golf Team in writing at a team meeting on 11 February 2008. The actions of ANDREW GIULIANI were sufficient to warrant permanent removal from the DUKE UNIVERSITY Men's Golf Team. COACH VINCENT, however, provided an opportunity for ANDREW GIULIANI to return to the DUKE UNIVERSITY Men's Golf Team.

For ANDREW GIULIANI to initiate a return to the DUKE UNIVERSITY Men's Golf Team, ANDREW GIULIANI needed to have the unanimous support of the DUKE UNIVERSITY Men's Golf Team. ANDREW GIULIANI'S first-step back onto the DUKE UNIVERSITY Men's Golf Team was through the unanimous support of his teammates. Such support never materialized. Subsequently, when it became clear that ANDREW GIULIANI did not have the unanimous support of the DUKE UNIVERSITY Men's Golf Team for the 2008 Spring season, COACH VINCENT provided another opportunity for ANDREW GIULIANI to return for the 2008-2009 season upon the unanimous support of the

2

six returning members of the DUKE UNIVERSITY Men's Golf Team. Again, this support did not occur and five of those six members specifically told ANDREW GIULIANI orally and in writing that they believed ANDREW GIULIANI'S "involvement with the Duke Golf Team" should be "terminated."

DUKE UNIVERSITY has established a grievance process for all of its student-athletes who believe that they are being unfairly treated in matters other than playing time. This three-level process culminates in a review by the DUKE UNIVERSITY Faculty Athletic Council representative - - a member of the faculty who is not part of the DUKE UNIVERSITY Athletic Department or the DUKE UNIVERSITY Office of General Counsel. This final review is conducted outside of both the Athletic Department and the Office of General Counsel. Despite repeated suggestions by COACH VINCENT, members of the DUKE UNIVERSITY Athletic Department and DUKE UNIVERSITY administrators to ANDREW GIULIANI and his parents to take the final step in this process if they believed that he was being treated unfairly, ANDREW GIULIANI, his parents and his counsel, repeatedly sought to avoid the process, to maneuver around it, and to attempt to

3

threaten and influence DUKE UNIVERSITY into placing ANDDREW GIULIANI back onto the DUKE UNIVERSITY Men's Golf Team.

ANDREW GIULIANI now sues COACH VINCENT and DUKE UNIVERSITY, claiming that under a non-existent contract ANDREW GIULIANI was promised something that no athlete at DUKE UNIVERSITY - - scholarship or non-scholarship - - has ever received: a guaranteed place on a varsity athletic team regardless of his conduct or his ability and lifetime access and privileges to the DUKE UNIVERSITY golf course; a privilege never enjoyed by any student, graduate or member of the golf team of DUKE UNIVERSITY.

ANDREW GIULIANI is entitled to no more privileges than any other member of the DUKE UNIVERSITY student body. Like every other member of the student body, ANDREW GIULIANI is responsible for both his actions and their consequences. He may avoid neither by creating an unwritten contract which, he claims, entitles him to a privileged place at DUKE UNIVERSITY and within its athletic department.

ANDREW GIULIANI was correctly suspended from the DUKE UNIVERSITY Men's Golf Team because of the individual

4

actions of ANDREW GIULIANI and the negative effect of those actions on the Team.

To the extent a response is otherwise required to the allegations in the title, "Nature of the Case," they are DENIED.

Responding to the allegations in the specifically numbered paragraphs of the complaint, DUKE UNIVERSITY and COACH VINCENT say:

1.  Admitted.

2.  Admitted.

3.  Admitted.

To the extent that the heading inserted before paragraph 4 requires a response, it is DENIED that someone not "named in the action" can be a party. It is admitted that such heading violates the Federal Rules of Civil Procedure and the Local Rules of the Middle District of North Carolina. All other allegations are DENIED.

4.  It is admitted that Ryan Ressa has been the Assistant Coach of the DUKE UNIVERSITY Men's Golf Team since the summer of 2007. It is DENIED that Mr. Ressa is a party in this action. It is further DENIED that Mr. Ressa

5

has any liability arising out of the claims brought in this action. All other allegations are DENIED.

5. It is admitted that Michael Sobb is an Assistant Athletics Director at DUKE UNIVERSITY. It is further admitted that Mr. Sobb supervises both COACH VINCENT and the DUKE UNIVERSITY Men's Golf Team. It is DENIED that Mr. Sobb is a party in this action. It is further DENIED that Mr. Sobb has any liability arising out of the claims brought in this action. All other allegations are DENIED.

6. It is admitted that Pamela Bernard is Vice President and General Counsel of DUKE UNIVERSITY. It is DENIED that Ms. Bernard is a party in this action. It is further DENIED that Ms. Bernard has any liability arising out of the claims brought in this action. It is admitted that the University procedures and regulations grant Ms. Bernard responsibilities for athletic governance. All other allegations are DENIED.

7. It is admitted that Michael Quagliano is a member of the DUKE UNIVERSITY Men's Golf Team. It is DENIED that Mr. Quagliano is a party in this action. It is further

DENIED that Mr. Quagliano has any liability arising out of the claims brought in this action. All other allegations are DENIED.

8. It is admitted that Adam Long is a member of the DUKE UNIVERSITY Men's Golf Team. It is DENIED that Mr. Long is a party in this action. It is further DENIED that Mr. Long has any liability arising out of the claims brought in this action. All other allegations are DENIED.

9. It is admitted that Matthew Pierce is a member of the DUKE UNIVERSITY Men's Golf Team. It is DENIED that Mr. Pierce is a party in this action. It is further DENIED that Mr. Pierce has any liability arising out of the claims brought in this action. All other allegations are DENIED.

10. As a result of the matters alleged in the complaint, which are DENIED, it is admitted that those allegations place jurisdiction and venue in the United States District Court for the Middle District of North Carolina. It is DENIED that the allegations in the complaint state claims upon which relief may be

7

granted. To the contrary, and as stated more fully in the Motion for Judgment on the Pleadings filed at the same time as this Answer, the complaint does not entitle ANDREW GIULIANI to any relief. All other allegations are DENIED.

To the extent that the heading inserted before paragraph 11 requires a response, the allegations are DENIED.

11. It is admitted that Rod Myers was the Head Coach of the DUKE UNIVERSITY Men's Golf Team in 2004. It is further admitted that Jim Kubinski was the Assistant Coach of the DUKE UNIVERSITY Men's Golf Team in 2004. It is further admitted that Coach Myers and Coach Kubinski were in contact with ANDREW GIULIANI while ANDREW GIULIANI was in high school. All other allegations are DENIED.

12. DENIED for lack of knowledge or information sufficient to form a belief as to the truth of the averments. In particular, Defendants are without knowledge or information sufficient to form a belief as to what Coach Myers "knew." All other allegations are DENIED.

8

13. Given the quality of the training facilities at DUKE UNIVERSITY that are for the use of the golf program, it is admitted that any coach, including Coach Myers, would bring these facilities to the attention of any potential student, including ANDREW GIULIANI. It is specifically DENIED that Coach Myers told ANDREW GIULIANI that ANDREW GIULIANI "would be given life-time access to those training facilities as an alumnus of the Duke Golf Program," as this is a privilege never given to any student at or graduate of DUKE UNIVERSITY. ANDREW GIULIANI, as any other non-scholarship, non-letter-of-intent, walk-on student at DUKE UNIVERSITY had the same rights as any other student at DUKE UNIVERSITY to compete for a position on any DUKE UNIVERSITY athletic team. All other allegations are DENIED.

14. It is admitted that when COACH VINCENT became head coach of the DUKE UNIVERSITY Men's Golf Team he gave every member of the Team one year to demonstrate abilities and skills that would entitle them to continue to be members of the DUKE UNIVERSITY Men's

9

Golf Team. In honor of COACH MYERS and the achievements of COACH MYERS, many aspects of the practice schedule and philosophy of the DUKE UNIVERSITY Men's Golf Team remained without change. It is further admitted that Coach Myers died in the Spring of 2007. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph, and the averments are, therefore, DENIED.

To the extent that the heading before paragraph 15 requires a response, the allegations are DENIED.

15. It is admitted that ANDREW GIULIANI enrolled as a student at DUKE UNIVERSITY. It is further admitted that ANDREW GIULIANI was entitled to the benefits of a student at DUKE UNIVERSITY. As more fully set out in the Motion for Judgment on the Pleadings filed at the same time as this answer, ANDREW GIULIANI had no contract with DUKE UNIVERSITY as alleged. All other allegations are DENIED.

16. It is DENIED that the documents referenced within the complaint comprise a contract between DUKE UNIVERSITY and ANDREW GIULIANI. All other allegations are DENIED. To the extent that the heading before paragraph 17 requires a response, it is specifically DENIED that COACH VINCENT acted illegally when he suspended ANDREW GIULIANI from the DUKE UNIVERSITY Men's Golf Team. It is further specifically DENIED that this suspension was without notice, without the opportunity for a hearing, or without cause. It is admitted that ANDREW GIULIANI'S permanent suspension from the DUKE UNIVERSITY Men's Golf Team was a result of ANDREW GIULIANI'S individual actions and the negative effect of ANDREW GIULIANI'S individual actions on the members of the DUKE UNIVERSITY Men's Golf Team. All other allegations are DENIED.

17. It is admitted that COACH VINCENT sought to reduce the size of the DUKE UNIVERSITY Men's Golf Team to a more manageable number of members. It is further admitted that members of the DUKE UNIVERSITY Men's Golf Team were not given any choice regarding the size of the team that COACH VINCENT fielded, as this is the type of

11

decision made by a coach and within a coach's full discretion. All other allegations are DENIED.

18. It is admitted that COACH VINCENT announced to ANDREW GIULIANI and the DUKE UNIVERSITY Men's Golf Team on 11 February 2008 that COACH VINCENT was suspending ANDREW GIULIANI from the DUKE UNIVERSITY Men's Golf Team effective immediately as more specifically stated in the 11 February 2008 memorandum from COACH VINCENT and based on the grounds specifically identified in COACH VINCENT'S memorandum of 11 February 2008, attached as Exhibit A to this answer. It is specifically DENIED that the members of the DUKE UNIVERSITY Men's Golf Team were shocked by the suspension of ANDREW GIULIANI. It is specifically DENIED that ANDREW GIULIANI should have been shocked given the nature and severity of his actions during the 2007-08 year and the stated intent of ANDREW GIULIANI as to the effect ANDREW GIULIANI desired his actions would have on the members of the DUKE UNIVERSITY Men's Golf Team, specifically including, but not limited to, the following:

12

(1) Injuring another member of the DUKE UNIVERSITY Men's Golf Team, Brian Kim, by ANDREW GIULIANI throwing an apple at Brian Kim with such force that the apple "exploded" when it hit Brian Kim in the face, leaving a mark on Brian Kim's face visible a day later;

(2) Hitting his golf bag with a putter with such force that ANDREW GIULIANI broke his driver, misled COACH VINCENT about what occurred, then improperly misplaced that club with a new driver, an action that should have disqualified him from the tournament in which he was playing if he had correctly identified his conduct;

(3) Injuring at least one member of the DUKE UNIVERSITY Men's Golf Team during a football game that was announced as a team-building exercise;

(4) Driving his personal vehicle at a high rate of speed at the entrance to a golf

13

course frequented by members and their
children;

(5) Becoming verbally abusive to and
physically confrontational with a member
of the DUKE UNIVERSITY coaching staff
during physical conditioning; and

(6) Violating consistently the rules and
integrity of the game of golf.

It is further specifically DENIED that ANDREW GIULIANI
was never given an opportunity to defend himself. All
other allegations are DENIED.

19. DENIED. ANDREW GIULIANI'S permanent suspension from
the DUKE UNIVERSITY Men's Golf Team was a result of
ANDREW GIULIANI'S individual actions and the negative
effect of ANDREW GIULIANI'S individual actions on the
members of the DUKE UNIVERSITY Men's Golf Team as more
fully described in the answer to the allegations in
paragraph 18. All other allegations are DENIED.

20. DENIED. It is specifically DENIED that COACH VINCENT
fabricated anything. It is further specifically DENIED
that the individual actions of ANDREW GIULIANI were

14

insufficient reason to suspend him from the DUKE UNIVERSITY Men's Golf Team. It is further specifically DENIED that there was any contract between DUKE UNIVERSITY and ANDREW GIULIANI. All other allegations are DENIED.

To the extent that the heading before paragraph 21 requires a response, it is DENIED. All other allegations are DENIED.

21. DENIED. Attached as EXHIBIT A to this Answer and incorporated by reference is COACH VINCENT'S memorandum of 11 February 2008 to ANDREW GIULIANI setting out the terms of and grounds for ANDREW GIULIANI'S suspension from the DUKE UNIVERSITY Men's Golf Team.

22. DENIED. The suspension of ANDREW GIULIANI from the DUKE UNIVERSITY Men's Golf Team was not related to ANDREW GIULIANI'S abilities as a golfer or competition for a position on the DUKE UNIVERSITY Men's Golf Team. As fully explained to and understood by ANDREW GIULIANI, ANDREW GIULIANI'S suspension from the DUKE UNIVERSITY Men's Golf Team was a result of ANDREW GIULIANI'S individual actions and the negative effect

15

of ANDREW GIULIANI'S individual actions on the members of the DUKE UNIVERSITY Men's Golf Team. The suspension of ANDREW GIULIANI from the DUKE UNIVERSITY Men's Golf Team was not related to competition; it was related to and a result of the individual actions and conduct of ANDREW GIULIANI previously identified. All other allegations are DENIED.

To the extent that the heading before paragraph 23 requires a response, it is specifically DENIED that COACH VINCENT did anything illegal. Given that ANDREW GIULIANI'S suspension was announced on 11 February 2008 at a team meeting attended by ANDREW GIULIANI, the DUKE UNIVERSITY Men's Golf Team coaches and members of the DUKE UNIVERSITY Men's Golf Team, it is further specifically DENIED that anything was done in secret. All other allegations are DENIED.

23. DENIED. Attached as EXHIBIT A to this Answer and incorporated by reference is COACH VINCENT'S memorandum of 11 February 2008 to ANDREW GIULIANI setting out the terms of and grounds for ANDREW GIULIANI'S suspension from the DUKE UNIVERSITY Men's Golf Team. The

16

suspension of ANDREW GIULIANI from the DUKE UNIVERSITY Men's Golf Team had no effect on the eligibility of ANDREW GIULIANI to participate in intercollegiate athletics. Upon the graduation of ANDREW GIULIANI from DUKE UNIVERSITY, ANDREW GIULIANI retains one year of eligibility to participate in intercollegiate athletics. The decision to participate thereafter in intercollegiate athletics is a decision exercised solely and individually by ANDREW GIULIANI. All other allegations are DENIED.

24. It is DENIED that there was a contract between ANDREW GIULIANI and DUKE UNIVERSITY. It is further DENIED that COACH VINCENT breached any contract between ANDREW GIULIANI and DUKE UNIVERSITY. As more fully explained in the Defendants' Motion for Judgment on the Pleadings filed at the same time as this Answer, all actions by COACH VINCENT and DUKE UNIVERSITY were proper and based upon the individual actions of ANDREW GIULIANI and the negative effect of the actions of ANDREW GIULIANI upon the DUKE UNIVERSITY Men's Golf Team. COACH VINCENT cannot cancel the intercollegiate athletic eligibility

17

of ANDREW GIULIANI or any DUKE UNIVERSITY student. Upon his graduation from DUKE UNIVERSITY, ANDREW GIULIANI has one year of eligibility remaining to participate in intercollegiate athletics. At all times, COACH VINCENT kept the Athletic Department of DUKE UNIVERSITY fully informed of all events and actions. All other allegations are DENIED.

25. DENIED. The allegations are specifically DENIED as to COACH VINCENT and Ms. Bernard.

To the extent that the heading before paragraph 26 requires a response, it is specifically DENIED that ANDREW GIULIANI received the unanimous support of the members of the 2007-08 or 2008-09 DUKE UNIVERSITY Men's Golf Team to be a member of or to return to the DUKE UNIVERSITY Men's Golf Team. It is further specifically DENIED that COACH VINCENT intervened in any manner with the decisions made by the members of the DUKE UNIVERSITY Men's Golf Team. Five of the returning 2008-09 members of the DUKE UNIVERSITY Men's Golf Team decided that ANDREW GIULIANI should not be a member of the DUKE UNIVERSITY Men's Golf Team. This was the individual decision of each of these members of the

18

2008-09 DUKE UNIVERSITY Men's Golf Team; that is, to terminate ANDREW GIULIANI from the DUKE UNIVERSITY Men's Golf Team. This decision was communicated to ANDREW GIULIANI orally and in writing. All other allegations are DENIED.

26. It is specifically DENIED that COACH VINCENT exercised duress at any point. It is further specifically DENIED that COACH VINCENT did anything that was unjustified or made any accusations that were unfounded. It is admitted that ANDREW GIULIANI sent a self-serving email in which he purported to apologize and to ask for forgiveness, which is attached as Exhibit B to this Answer. It is further admitted that ANDREW GUILIANI himself described his actions as "immature," "unbecoming of a good teammate," "stupid," and of a "bully mentality." All other allegations are DENIED.

27. It is DENIED that Brian Kim's email supported ANDREW GIULIANI'S reinstatement to the DUKE UNIVERSITY Men's Golf Team. When the two emails from Brian Kim are read in context and time, it is clear that Brian Kim justifiably reacted to being struck by the apple thrown

19

by ANDREW GIULIANI with such force that the apple exploded upon hitting Brian Kim's face, leaving a mark on Brian Kim's face a day later. No support of ANDREW GIULIANI by Brian Kim may be concluded from these emails. It is further DENIED that COACH VINCENT commented that the letter did not qualify as a letter supporting ANDREW GIULIANI'S reinstatement. All other allegations are DENIED.

28. DENIED. It is specifically DENIED that ANDREW GIULIANI received the unanimous support of the members of the 2007-08 or 2008-08 DUKE UNIVERSITY Men's Golf Team.

29. DENIED.

30. DENIED. ANDREW GIULIANI specifically asked COACH VINCENT whether ANDREW GIULIANI should attend a tournament in which members of the DUKE UNIVERSITY Men's Golf Team were participating. COACH VINCENT responded that he would give ANDREW GIULIANI an answer. Thereafter, COACH VINCENT told the members of the DUKE UNIVERSITY Men's Golf Team of ANDREW GIULIANI'S inquiry. All members of the DUKE UNIVERSITY Men's Golf Team stated that they did not want ANDREW GIULIANI to

20

attend the tournament. COACH VINCENT informed ANDREW GIULIANI of this decision by the members of the DUKE UNIVERSITY Men's Golf Team. All other allegations are DENIED.

31. It is admitted that COACH VINCENT conducted a qualifier to determine who would be on the 2008-09 DUKE UNIVERSITY Men's Golf Team, consistent with the procedure set forth in the 2007-08 Duke Men's Golf Players Guide, which is attached as Exhibit C to this Answer. It if further admitted that: (1) there was one open position on the 2008-09 DUKE UNIVERSITY Men's Golf Team; and (2) in order to be considered for that one position, a golfer was required to win the qualifier and exceed the target score for the one open or available position. It is specifically DENIED that the number of members of the 2008-09 DUKE UNIVERSITY Men's Golf Team was set. It is further specifically DENIED that COACH VINCENT instilled any fear, new or otherwise, in any of the members of the DUKE UNIVERSITY Men's Golf Team. All other allegations are DENIED.

32.  It is specifically DENIED that the interests of anyone on the DUKE UNIVERSITY Men's Golf Team were in conflict with ANDREW GIULIANI'S reinstatement, except to the extent that ANDREW GIULIANI was a detriment to the team.  It is further DENIED that anyone feared that COACH VINCENT would dismiss him from the team without warning or notice.  All other allegations are DENIED.

To the extent that the heading before paragraph 33 requires a response, it is specifically DENIED that COACH VINCENT violated any of ANDREW GIULIANI'S contract rights.  It is further specifically DENIED that COACH VINCENT tried to coerce ANDREW GIULIANI into doing anything.  It is expressly DENIED that ANDREW GIULIANI had a contract with DUKE UNIVERSITY relating to the DUKE UNIVERSITY Men's Golf Team.  All other allegations are DENIED.

33.  DENIED.

34.  It is admitted that COACH VINCENT suggested to ANDREW GIULIANI that ANDREW GIULIANI qualify for the 2008-09 DUKE UNIVERSITY Men's Golf Team.  It is also admitted that COACH VINCENT suggested to ANDREW GIULIANI that qualifying for the 2008-09 DUKE UNIVERSITY Men's Golf

Team would demonstrate the commitment of ANDREW GIULIANI to other members of the DUKE UNIVERSITY Men's Golf Team. It is further admitted that COACH VINCENT suggested to ANDREW GIULIANI that participating in qualifying would be beneficial to ANDREW GIULIANI because he had not played during the spring of 2008. It is admitted that ANDREW GIULIANI refused to qualify. It is further admitted that five members of the 2008-09 DUKE UNIVERSITY Men's Golf Team, orally and in writing, informed ANDREW GIULIANI that ANDREW GIULIANI should be "terminated" from the 2008-09 DUKE UNIVERSITY Men's Golf Team. All other allegations are DENIED.

35. It is admitted that COACH VINCENT suggested to ANDREW GIULIANI that ANDREW GIULIANI qualify and would need the support of the returning members of the 2008-09 DUKE UNIVERSITY Men's Golf Team in order for ANDREW GIULIANI to be considered for membership on the 2008-09 DUKE UNIVERSITY Men's Golf Team. It is admitted that ANDREW GIULIANI refused to qualify. It is further admitted that five members of the 2008-09 DUKE UNIVERSITY Men's Golf Team, orally and in writing,

informed ANDREW GIULIANI that they agreed that ANDREW GIULIANI should be "terminated" from the 2008-09 DUKE UNIVERSITY Men's Golf Team. All other allegations are DENIED.

36. It is admitted that COACH VINCENT presented to ANDREW GIULIANI and his step-father, Ed Oster, the document that is attached to the Complaint as Exhibit 1 and specifically requested any changes or input ANDREW GIULIANI or his step-father, Ed Oster, wished to be included. It is specifically DENIED that there was any bizarre manipulation. All other allegations are DENIED.

37. It is admitted that COACH VINCENT presented to ANDREW GIULIANI and his step-father the document that is attached to the Complaint as Exhibit 1 and specifically requested any changes or input ANDREW GIULIANI or his step-father desired to make. It is further admitted that the document contains space for two signatures. All other allegations are DENIED.

To the extent that the heading before paragraph 38 requires a response, it is specifically DENIED that the document

24

attached to the Complaint as Exhibit 1 is any type of waiver agreement. It is further specifically DENIED that anything was done in secret, because ANDREW GIULIANI'S suspension and the terms of that suspension were announced at a meeting of the DUKE UNIVERSITY Men's Golf Team and discussed at other team meetings. All other allegations are DENIED.

38. It is admitted that COACH VINCENT presented ANDREW GIULIANI with the document that is attached to the Complaint as Exhibit 1. It is specifically DENIED that the document attached to the Complaint as Exhibit 1 is any type of waiver agreement. It is further specifically DENIED that anything was done in secret, because ANDREW GIULIANI'S suspension and the terms of that suspension were announced at a meeting of the DUKE UNIVERSITY Men's Golf Team and discussed at other team meetings. It is admitted that the document was presented to ANDREW GIULIANI on two separate occasions. After the first occasion during which Exhibit 1 was presented to ANDREW GIULIANI and his step-father, it is admitted that COACH VINCENT met separately with ANDREW

25

GIULIANI'S step-father during which time ANDREW GIULIANI'S step-father expressed the position that ANDREW GIULIANI would be able to meet the requirements for return to the DUKE UNIVERSITY Men's Golf Team. Relying upon the statement made by ANDREW GIULIANI'S step-father, COACH VINCENT presented Exhibit 1 to ANDREW GIULIANI. It is admitted that ANDREW GIULIANI refused to sign the document. All other allegations are DENIED.

39. It is admitted that the document attached to the Complaint as Exhibit 1 was presented to ANDREW GIULIANI at a meeting with COACH VINCENT, Mr. Sobb, and ANDREW GIULIANI'S step-father, Mr. Oster. It is further admitted that Mr. Sobb attended the meeting in his capacity as Assistant Athletic Director. All other allegations are DENIED.

40. It is admitted that COACH VINCENT presented ANDREW GIULIANI with the document that is attached to the Complaint as Exhibit 1 and stated that Exhibit 1 was not a legal document. It is specifically DENIED that the document attached to the Complaint as Exhibit 1 is

26

any type of waiver agreement. All other allegations are DENIED.

41. It is specifically DENIED that COACH VINCENT had any malicious intent or had a deliberate indifference to ANDREW GIULIANI'S rights. It is admitted that COACH VINCENT presented ANDREW GIULIANI with the document that is attached to the Complaint as Exhibit 1 and stated that it was not a legal document. It is specifically DENIED that the document attached to the Complaint as Exhibit 1 is any type of waiver agreement. It is further specifically DENIED that anything was done in secret, because ANDREW GIULIANI'S suspension and the terms of that suspension were announced at a meeting of the DUKE UNIVERSITY Men's Golf Team and discussed at other team meetings. It is admitted, however, that COACH VINCENT agreed to protect the communications of the members of the DUKE UNIVERSITY Men's Golf Team to avoid having them subjected to undue harassment by ANDREW GIULIANI or his family. All other allegations are DENIED.

27

42. It is admitted that the document attached to the Complaint as Exhibit 1 was presented to ANDREW GIULIANI at a meeting with COACH VINCENT, Mr. Sobb, and ANDREW GIULIANI'S, step-father, Mr. Oster. It is admitted that ANDREW GIULIANI did not sign the agreement. It is further admitted that COACH VINCENT again met with ANDREW GIULIANI, and that ANDREW GIULIANI again did not sign the agreement. It is also admitted that COACH VINCENT told ANDREW GIULIANI that COACH VINCENT strongly disagreed with the decision by ANDREW GIULIANI. All other allegations are DENIED.

To the extent that the heading before paragraph 43 requires a response, it is specifically DENIED that the document attached to the Complaint as Exhibit 1 is any type of waiver agreement. It is further specifically DENIED that COACH VINCENT retaliated against ANDREW GIULIANI. All other allegations are DENIED.

43. It is specifically DENIED that COACH VINCENT retaliated against ANDREW GIULIANI or orchestrated anything. With respect to subparagraph (a), it is DENIED that COACH VINCENT influenced any of the members of the DUKE

28

UNIVERSITY Men's Golf Team regarding the eventual positions that each person took. It is further DENIED that all but one of the members of the DUKE UNIVERSITY Men's Golf Team had expressed support for ANDREW GIULIANI to return to the team. With respect to subparagraph (b), it is admitted that ANDREW GIULIANI was treated just as every other student-athlete at DUKE UNIVERSITY, whose parking privileges are revoked after they cease to be a member of a sports team. With respect to subparagraph (c), it is admitted that ANDREW GIULIANI was treated just as any other DUKE UNIVERSITY student who is not a member of one of the Golf Teams, in that he was not allowed to play and practice for free at the DUKE UNIVERSITY Golf Course. All other allegations are DENIED.

44. DENIED. Members of the DUKE UNIVERSITY Men's Golf Team and COACH VINCENT told ANDREW GIULIANI that he was permanently suspended from the DUKE UNIVERSITY Men's Golf Team.

To the extent that the heading before paragraph 45 requires a response, it is specifically DENIED that DUKE UNIVERSITY

lawyers poisoned the grievance process. It is admitted that members of the DUKE UNIVERSITY Counsel's office requested and suggested to ANDREW GIULIANI that he follow the procedures available to all student-athletes and not try to circumvent those procedures. All other allegations are DENIED.

45. It is DENIED that ANDREW GIULIANI initiated the meeting with Dr. Chris Kennedy. It is admitted that Dr. Chris Kennedy met with ANDREW GIULIANI as part of the ordinary oversight of the athletic teams by Dr. Chris Kennedy. It is admitted that Dr. Chris Kennedy acted in conformance with the Student-Athlete Grievance Policy. It is admitted that as part the Student-Athlete Grievance Policy, Dr. Kennedy met with members of the DUKE UNIVERSITY Men's Golf Team and then separately with ANDREW GIULIANI. All other allegations are DENIED.

46. It is admitted that COACH VINCENT suggested to members of the DUKE UNIVERSITY Men's Golf Team that they meet with ANDREW GIULIANI. All other allegations are DENIED.

47. DENIED. It is admitted that Dr. Chris Kennedy suggested that it would be good for the members of the DUKE UNIVERSITY Men's Golf Team to meet with ANDREW GIULIANI and requested that COACH VINCENT facilitate the meeting. Although the members of the DUKE UNIVERSITY Men's Golf Team did not want to meet further with ANDREW GIULIANI because the members of the DUKE UNIVERSITY Men's Golf Team had previously told ANDREW GIULIANI that they did not want him on the golf team, the meeting occurred as requested at the DUKE UNIVERSITY golf facilities at which time the members of the DUKE UNIVERSITY Men's Golf Team again told ANDREW GIULIANI they did not want him to return to the Team. All other allegations are DENIED.

48. It is DENIED that Ms. Bernard shut down any inquiry by Dr. Chris Kennedy into the facts of ANDREW GIULIANI'S suspension from the DUKE UNIVERSITY Men's Golf Team. It is admitted that Dr. Chris Kennedy removed himself from the process after a meeting with ANDREW GIULIANI'S lawyer in which ANDREW GIULIANI's lawyer specifically stated that ANDREW GIULIANI would file suit if he was

31

not immediately reinstated on the DUKE UNIVERSITY MEN'S GOLF Team. It is further admitted that Ms. Bernard asked ANDREW GIULIANI'S lawyer to communicate through her office rather than directly with employees of the Athletic Department as is required under Rule 4.2 of the Revised Professional Rules of Conduct which govern all lawyers practicing in North Carolina. It is admitted that ANDREW GIULIANI'S lawyer sent Ms. Bernard a letter with various documents attached. The letter itself is attached as Exhibit D to this Answer. All other allegations are DENIED.

49. It is admitted that Ms. Hendricks had primary responsibility for investigating ANDREW GIULIANI'S actions and the actions taken by COACH VINCENT. It is DENIED that the inquiry by Ms. Hendricks into the facts of ANDREW GIULIANI'S suspension from the DUKE UNIVERSITY Men's Golf Team was a sham. All other allegations are DENIED.

50. DENIED. ANDREW GIULIANI'S lawyer requested that Ms. Hendricks meet with ANDREW GIULIANI'S mother. ANDREW GIULIANI'S lawyer never requested that ANDREW GIULIANI

32

meet with Ms. Hendricks. As stated specifically in writing to ANDREW GIULIANI'S lawyer, Ms. Hendricks requested any information additional to that previously provided by ANDREW GIULIANI'S lawyer, but ANDREW GIULIANI'S lawyer did not provide any additional information.

51. It is admitted that ANDREW GIULIANI and his family were attempting to circumvent the procedures available to all student-athletes at DUKE UNIVERSITY by contacting high-level administrative officers directly. It is further admitted that ANDREW GIULIANI'S lawyer repeatedly wrote to Ms. Bernard expressing the "urgency" of a clarification of ANDREW GIULIANI'S position on the DUKE UNIVERSITY Men's Golf Team. It is still further admitted that Ms. Bernard's letter, which is attached as Exhibit E, responded to ANDREW GIULIANI'S lawyer's repeated communications regarding ANDREW GIULIANI'S status. All other allegations are DENIED.

52. It is DENIED that COACH VINCENT'S conduct was bizarre. It is further DENIED that anyone involved in the

33

grievance process is required to defer to Ms. Bernard. All other allegations are DENIED.

53. DENIED.

54. DENIED.

To the extent that the heading before paragraph 55 requires a response, the allegations are DENIED.

55. It is admitted that ANDREW GIULIANI is treated by DUKE UNIVERSITY in the same way that it treats all students who are not members of the DUKE UNIVERSITY Men's Golf Team. It is admitted that NCAA rules and regulations have specific application to individual collegiate athletes. All other allegations are DENIED.

56. It is DENIED that ANDREW GIULIANI has exhausted all viable sources of relief within DUKE UNIVERSITY. It is admitted that ANDREW GIULIANI and his family have been informed numerous times of the grievance process available to him, two of which communications are attached as Exhibits F and G to this Answer. ANDREW GIULIANI has refused to make use of that procedure. All other allegations are DENIED.

34

57. DUKE UNIVERSITY and COACH VINCENT replead their answers to the allegations of paragraphs 1 through 56 of the Complaint. All other allegations are DENIED.

58. DENIED.

59. DENIED.

60. DENIED.

61. DENIED.

62. DENIED.

63. DENIED.

64. DENIED.

65. DENIED.

66. DENIED. The allegations in subparagraphs a, b, c, and d are specifically DENIED.

67. DENIED.

To the extent that the heading before paragraph 68 requires a response, it is specifically DENIED.

68. DENIED.

69. DENIED.

70. DENIED.

71. It is admitted that the student-athlete grievance process is available to student-athletes at DUKE

35

UNIVERSITY and that ANDREW GIULIANI has refused to utilize this process. All other allegations are DENIED.

72. DENIED.

73. DENIED.

74. DENIED.

75. It is admitted that COACH VINCENT'S handling of ANDREW GIULIANI'S actions was done in the course and scope of his employment with DUKE UNIVERSITY as the Head Coach of the DUKE UNIVERSITY Men's Golf Team. All other allegations are DENIED.

76. It is DENIED that there was a contract as alleged within the Complaint. All other allegations are DENIED.

77. It is DENIED that COACH VINCENT has engaged in any willful, wanton, fraudulent, or malicious conduct as alleged in the Complaint. All other allegations are DENIED.

78. DENIED.

79. DENIED.

36

80. DUKE UNIVERSITY and COACH VINCENT replead their answers to the allegations of paragraphs 1 through 79 of the Complaint. All other allegations are DENIED.

81. The allegations of paragraph 81 are legal conclusions to which no responsive pleading is required. To the extent that a response is required, all other allegations are DENIED.

82. DENIED. The allegations in subparagraphs a, b, and c are specifically DENIED.

83. DENIED.

84. DENIED.

85. DENIED.

86. DUKE UNIVERSITY and COACH VINCENT replead their answers to the allegations of paragraphs 1 through 85 of the Complaint. All other allegations are DENIED.

87. DENIED.

88. DENIED.

89. DENIED.

90. It is admitted that COACH VINCENT'S handling of ANDREW GIULIANI'S actions was done in the course and scope of his employment with DUKE UNIVERSITY as the Head Coach

37

of the DUKE UNIVERSITY Men's Golf Team.  It is DENIED that either COACH VINCENT or DUKE UNIVERSITY has any liability for the allegations within the Complaint. All other allegations are DENIED.

91. DENIED.

92. DENIED.

93. DUKE UNIVERSITY and COACH VINCENT replead their answers to the allegations of paragraphs 1 through 92 of the Complaint.  All other allegations are DENIED.

94. It is admitted that DUKE UNIVERSITY was in contact with ANDREW GIULIANI about whether to enroll at DUKE UNIVERSITY.  It is DENIED that DUKE UNIVERSITY or Coach Myers aggressively recruited ANDREW GIULIANI.  All other allegations are DENIED.

95. Given the quality of the training facilities at DUKE UNIVERSITY that are for the use of the golf program, it is admitted that any coach, including Coach Myers, would bring these facilities to the attention of any recruit, including ANDREW GIULIANI.  It is specifically DENIED that Coach Myers told ANDREW GIULIANI that ANDREW GIULIANI "would have a lifetime right of access

38

to those training facilities." All other allegations are DENIED.

96. DENIED.

97. It is admitted that Coach Myers was genuine and sincere in all of his actions and conduct. All other allegations are DENIED.

98. DENIED.

99. DENIED.

100. DENIED.

101. DUKE UNIVERSITY and COACH VINCENT replead their answers to the allegations of paragraphs 1 through 100 of the Complaint. All other allegations are DENIED.

102. DENIED. The allegations in subparagraphs a, b, c, d, e, and f are specifically DENIED.

103. DENIED.

104. DENIED.

105. DENIED.

106. DENIED. The allegations in subparagraphs 1, 2, 3, 4, and 5 are specifically DENIED.

## SECOND DEFENSE

The complaint and each claim for relief in the complaint fail to state claims upon which relief may be granted and should be dismissed pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

## THIRD DEFENSE

Even if there were any type of agreement or contract between ANDREW GIULIANI and DUKE UNIVERSITY, which is expressly and specifically DENIED, then ANDREW GIULIANI failed to comply with a condition precedent to instituting the present action by participating fully in the grievance process for all student-athletes at DUKE UNIVERSITY who believe they are being unfairly treated in matters other than playing time. The failure of ANDREW GIULIANI to comply with this condition precedent is pleaded in bar of any recovery by him in this action.

## FOURTH DEFENSE

Even if it were determined that there is any contract between ANDREW GIULIANI and DUKE UNIVERSITY, which is expressly and specifically DENIED, then such contract is

40

barred under the Statute of Frauds and other applicable laws under the State of New York.

<u>FIFTH DEFENSE</u>

DUKE UNIVERSITY and COACH VINCENT plead the provisions of Chapter 1D of the North Carolina General Statutes in bar of any recovery by the Plaintiff for punitive damages from DUKE UNIVERSITY and COACH VINCENT.

<u>SIXTH DEFENSE</u>

An award of punitive damages in the circumstances of this case would clearly be violative of the due process rights of DUKE UNIVERSITY and COACH VINCENT as embraced by the Fifth and Fourteenth Amendments to the United States Constitution and by the due process clause of the North Carolina Constitution, jointly and separately, as such award would constitute a deprivation of property without due process of law for the following reasons as separately stated herein.

a. There is no rational relationship between the punitive damage awards in North Carolina and the alleged wrongfulness of DUKE UNIVERSITY'S or COACH

41

VINCENT'S conduct and/or the compensatory damages awarded.

b. No rational relationship exists between the extent of punitive damages and legitimate interests to be advanced by the State of North Carolina.

c. An award of punitive damages in this case would be penal in nature and thus, would be violative of the constitutional rights of DUKE UNIVERSITY and COACH VINCENT under the United States Constitution and/or the North Carolina Constitution unless DUKE UNIVERSITY and COACH VINCENT are granted the procedural safeguards afforded criminal Defendants including but not limited to constitutional safeguards against self-incrimination and a heightened standard of proof beyond a reasonable doubt.

d. The award of punitive damages on the basis of vicarious liability for the conduct of others violates the constitutional rights of DUKE UNIVERSITY and COACH VINCENT.

WHEREFORE, COACH VINCENT and DUKE UNIVERSITY request that this Court:

1.  Dismiss this action with prejudice;

2.  Deny any relief to ANDREW GIULIANI; and

3.  For such other and further relief as the Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

DUKE UNIVERSITY and COACH VINCENT demand trial by jury on all issues raised by the pleadings.


This 10th day of September 2008.

<u>/s/ J. Donald Cowan, Jr.</u>
J. Donald Cowan, Jr.
N.C. State Bar No. 0968
Email:
don.cowan@elliswinters.com
Dixie T. Wells
N.C. State Bar No. 26816
Email:
dixie.wells@elliswinters.com
ELLIS & WINTERS LLP
100 N. Greene Street, Suite 102
Greensboro, North Carolina 27401
Telephone: (336) 217-4193
Facsimile: (336) 217-4198

<u>/s/ James P. Cooney III</u>
James P. Cooney III
N.C State Bar No. 12140
Email: jcooney@wcsr.com
WOMBLE CARLYLE SANDRIDGE & RICE

43

Case 1:08-cv-00502-WO-WWD   Document 9   Filed 09/10/08   Page 43 of 45

One Wachovia Center, Suite 3500
301 South College Street
Charlotte, NC  28202
Telephone:  (704) 331-4980

Attorneys for Defendants Duke
University and Orrin Daniel
Vincent III

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 10 September 2008, I electronically filed the foregoing Answer with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Counsel for the Plaintiff
Robert C. Ekstrand
Email: rce@ninthstreetlaw.com

This 10th day of September 2008.

/s/ J. Donald Cowan, Jr.
J. Donald Cowan, Jr.

Attorney for Defendants Duke
University and Orrin Daniel
Vincent III