# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ANDREW GIULIANI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION,** |
| v. | ) **RECOMMENDATION,** |
| | ) **AND ORDER** |
| DUKE UNIVERSITY and ORRIN | ) |
| DANIEL VINCENT III, | ) 1:08CV502 |
| | ) |
| Defendants. | ) |

This matter is before the court on the following motions: (1) a motion for judgment on the pleadings (docket no. 10) filed by Defendants Duke University ("Duke") and Orrin Daniel Vincent III ("Vincent"), (2) a motion to strike elements of Defendants' pleadings (docket no. 12) filed by Plaintiff Andrew Giuliani, and (3) a motion for status conference (docket no. 19) filed by Plaintiff. The parties have responded to the motions, and, in this respect, the matter is ripe for disposition. The parties have not consented to the jurisdiction of the magistrate judge, thus the motion for judgment on the pleadings must be dealt with by way of recommendation. For the reasons stated herein, (1) it will be recommended that Defendants' motion for judgment on the pleadings be granted on the ground that Plaintiff has failed to establish the elements of a breach of contract claim, (2) the

motion to strike elements of Defendants' pleadings will be denied as moot, and (3) the motion for status conference will be denied as moot.

## I. Factual Background

This case arises from Plaintiff's dismissal from the Duke men's varsity golf team during the spring of 2008. *See* Compl. ¶ 18 (docket no. 1). Plaintiff was recruited to play varsity golf at Duke by Head Coach Rod Myers ("Myers"), who was replaced by Vincent after Myers' unexpected death in the spring of 2007. *See id.* ¶¶ 3, 11, 14. Plaintiff alleges that he was induced to play at Duke over other institutions because of two promises made by Myers: "life-time access to ['state-of-the-art'] training facilities as an alumnus of the Duke Golf Program" and "the opportunity to compete with his teammates to earn spots in the most competitive [golf] tournaments against the most competitive players in the NCAA." *Id.* ¶ 13. Plaintiff accepted the offer to attend Duke and play on the golf team, hoping to achieve his "dream to become a professional golfer after college." *Id.* ¶¶ 12, 15. He did not sign a letter of intent or receive an athletic scholarship.[1]

Plaintiff tees up his case by alleging that his dismissal from the Duke golf team was a "secret expulsion . . . without notice, without an opportunity to defend

---

[1] Defendants alleged these facts in their Brief in Support of Defendants' Motion for Judgment on the Pleadings (docket no. 11), which were not contradicted by Plaintiff's Complaint (docket no. 1) nor Plaintiff's Opposition to Defendants' Motion for Judgment on the Pleadings (docket no. 14).

2

himself, and without cause in violation of University-issued policies enacted to protect students from such arbitrary acts." Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings at 1 (citations omitted) (docket no. 14). According to Plaintiff, Myers' promises constituted an offer, and Plaintiff's agreement to attend Duke was an acceptance that created a legally binding contract between Plaintiff and Duke. *See* Compl. ¶¶ 15-16. Plaintiff alleges that this contract "is memorialized in several documents that govern the dimensions of the relationship between [Plaintiff] Andrew and the University," specifically, "**EXHIBIT 5** (the Duke University Student-Athlete Handbook, Revised May, 2007); **EXHIBIT 6** (the Duke University Athletic Department Policy Manual); **EXHIBIT 7** (the Duke University Student Bulletin); and **EXHIBIT 8** (the 2007-2008 NCAA Division I Manual (Constitution and By-Laws)." *Id.* ¶¶ 16, 60. When Vincent dismissed Plaintiff from the golf team and revoked his student-athlete access to Duke's golf facilities, this contract was allegedly breached. *Id.* ¶¶ 57-73. According to Plaintiff, "[t]he only University document that is consistent with O. D. Vincent's scheme [to dismiss Plaintiff] is the library's copy of William Goulding's *The Lord of the Flies*." *Id.* ¶ 70.

## II. Standard of Review

In deciding a motion for judgment on the pleadings under F<small>ED</small>. R. C<small>IV</small>. P. 12(c), the court should apply the same standard as when ruling on a motion to

3

dismiss for failure to state a claim upon which relief may be granted under FED. R. CIV. P. 12(b)(6). *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). The Fourth Circuit recently reiterated that standard:

> [W]e "take the facts in the light most favorable to the plaintiff," but "we need not accept the legal conclusions drawn from the facts," and "we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *see also Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Additionally, the complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (emphasis added).
>
> . . . .
>
> The conclusion that dismissal is appropriate comports with *Twombly* . . . [when the pleadings do not disclose] "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. In *Twombly*, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.* at 1964-65, upheld the dismissal of a complaint where the plaintiffs did not "nudge [] their claims across the line from conceivable to plausible." *Id.* at 1974.

*Giarratano v. Johnson*, 521 F.3d 298, 302 & 304 (4th Cir. 2008).

## III. Discussion

This court, sitting in diversity, applies North Carolina's choice-of-law rules. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Under those rules, "'it is a generally accepted principle that the test of the place of a contract is as to the place at which the last act was done by either of the parties

4

essential to a meeting of minds.'" *Key Motorsports, Inc. v. Speedvision Network, L.L.C.*, 40 F. Supp. 2d 344, 347 (M.D.N.C. 1997) (quoting *Fast v. Gulley*, 155 S.E.2d 507, 510 (N.C. 1967)). Here, Plaintiff alleges that the contract was formed when he enrolled at Duke. *See* Compl. ¶ 15. Accordingly, North Carolina law governs.

A. Plaintiff's Breach of Contract Claim

Plaintiff contends that all elements for a breach of contract claim were properly alleged. *See* Pl.'s Opp'n at 4-10 (docket no. 14). His analysis, however, slices far from the fairway.

"Under North Carolina law, in order to state a claim for breach of contract there must be (1) a valid contract; and (2) breach of the terms of that contract." *Elina Adoption Servs., Inc. v. Carolina Adoption Servs., Inc.*, No. 1:07CV169, 2008 WL 4005738, at *3 (M.D.N.C. Aug. 25, 2008) (citing *Poor v. Hill*, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000)). "A valid contract exists when there is an agreement based on a meeting of the minds and sufficient consideration." *Id.* (citing *Creech ex rel. Creech v. Melnik*, 556 S.E.2d 587, 591 (N.C. Ct. App. 2001)). "Under North Carolina law, an employee handbook or policy manual does not create a legally binding contract between employer and employee unless the terms of the handbook are expressly incorporated into a separate employment contract." *Brewer v. Jefferson-Pilot Standard Life Ins. Co.*, 333 F.

5

Supp. 2d 433, 439 (M.D.N.C. 2004); *see also Johnson v. Mayo Yarns, Inc.*, 484 S.E.2d 840, 843 (N.C. Ct. App. 1997) (employee handbooks "do not constitute a contract unless expressly made part of the employment contract").

Plaintiff argues that a valid contract was created when he accepted Duke's offer to play varsity golf. In his complaint, Plaintiff alleges:

> The specific provisions of the Contract that are at issue in this action are annexed to this Complaint as **EXHIBIT 5** (the Duke University Student-Athlete Handbook, Revised May, 2007); **EXHIBIT 6** (the Duke University Athletic Department Policy Manual); **EXHIBIT 7** (the Duke University Student Bulletin); and **EXHIBIT 8** (the 2007-2008 NCAA Division I Manual (Constitution and By-Laws)).

Compl. ¶ 60. In his brief, however, Plaintiff states that he "is not alleging that the Bulletins themselves are the Contract, but that elements of the Contract are evinced in the documents which contain, among other things, the terms of the agreement . . . ." Pl.'s Opp'n at 10. This attempt to change arguments between the complaint and the brief is like trying to change clubs after hitting the golf ball–Plaintiff is stuck with the club (in this case the argument) that he first picked.

Non-binding student policy manuals are not binding contracts. *See Love v. Duke Univ.*, 776 F. Supp. 1070, 1075 (M.D.N.C. 1991), *aff'd*, 959 F.2d 231 (4th 1992) (Duke's academic bulletin was not a binding contract). Therefore, Plaintiff's reliance on four student policy manuals as evidence of a contract is a swing and a miss. Plaintiff argues that *Love* does not control because it was decided before *Ryan v. Univ. of N.C. Hosps.*, 494 S.E.2d 789 (N.C. Ct. App.

6

1998), *disc. rev. improvidently allowed*, 507 S.E.2d 39 (N.C. 1998). This would be true if *Ryan* contradicted *Love*, but it does not. In *Ryan*, a medical resident signed a written employment contract that expressly included by reference a student manual. *Ryan*, 494 S.E.2d at 790. The *Ryan* court sustained a breach of an "educational contract," but limited its review to "an identifiable contractual promise that the University failed to honor." *Id.* at 790-91. Thus, *Ryan* did not contradict the basic rule articulated in *Love* that a non-binding student policy manual, without more, is not a binding contract.

Plaintiff also contends that because the *Ryan* court "relied extensively on *Ross v. Creighton Univ.*, 957 F.2d 410 (7th Cir. 1992)," this court should consider the Seventh Circuit's holding. *Ross* serves as a putter, however, where Plaintiff needs a sand wedge to get out of the hazard. In *Ross*, the plaintiff was a scholarship basketball player who was recruited by Creighton University despite its knowledge that he was not educationally prepared for college academics. *Id.* at 411. Plaintiff alleged that Creighton had breached an identifiable promise to provide specific educational services in exchange for his playing basketball. *Id.* at 417. The court addressed the limited question of "whether the University had provided any real access to its academic curriculum at all." *Id. Ross* cautioned, however, against broad application of its holding: "We agree – indeed we emphasize – that courts should not take on the job of supervising the relationship

7

between colleges and student-athletes or creating in effect a new relationship between them." *Id.* (internal quotations omitted). This court, following *Ross's* caution, declines to supervise the relationship between Plaintiff and Duke.

Reliance on the four student policy manuals as binding contracts is also impermissible because they can be unilaterally altered at any time. *See Brooks v. Hackney*, 404 S.E.2d 854, 857 (N.C. 1991) (a contract without sufficiently definite terms is unenforceable); *Boyce v. McMahan*, 208 S.E.2d 692, 695 (N.C. 1974) (alleged contract that leaves terms open for future agreement is not enforceable). All of the manuals upon which Plaintiff relies have provisions allowing unilateral changes.[2]

Plaintiff has failed to satisfy the first element of a breach of contract claim: existence of a valid contract. Accordingly, Defendants are entitled to a judgment on the pleadings.

B. Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing Claim

Plaintiff alleges that Defendants breached the implied covenant of good faith and fair dealing "when the University's policymakers turned a blind eye and did nothing to prevent O. D. Vincent from deliberately injuring Andrew's right to

---

[2] For example: (1) "[I]ndividual teams are free to develop their own team rules . . . ." Compl. Ex. 5 at 11; (2) policies and procedures in the Athletic Department Manual "may be modified by the President without referral to the Board." *See id.* Ex. 6 at 3; Duke reserves the right to change "matters described herein without prior notice . . . ." *Id.* Ex. 7 at 4; various NCAA Division I Manual provisions have been modified since Plaintiff enrolled at Duke. *See, e.g., id.* Ex. 8 ¶¶ 11.2.2, 13.02.7, 13.02.14, 14.1.2.3.

receive the benefits of his contract with the University." Pl.'s Opp'n at 17 (docket no. 14). Plaintiff attempts to take a mulligan with this argument; however, this shot also lands in the drink.

Plaintiff states, and the court agrees, that "[t]he North Carolina Supreme Court has *clearly* established that '[i]n every contract there is an implied covenant of good faith and fair dealing . . . .' *Bicycle Transit Auth. v. Bell*, 333 S.E.2d 299, 305 (N.C. 1986) . . . ." Pl.'s Opp'n at 17 (emphasis added). It is equally clear, however, that without a contract there is no implied covenant of good faith and fair dealing. Plaintiff states that "[i]n order to prevail on this claim at this stage, Defendants must convince the Court that no conceivable agreement exists between a student and university." *Id.* The issue presented to this court at this stage is not whether students and universities can conceivably enter into agreements, but whether Plaintiff and Defendants entered into the specific agreement to play golf described in the complaint. Because Plaintiff and Defendants do not have a valid contract, the covenant of good faith and fair dealing does not arise. Accordingly, Defendants are entitled to a judgment on the pleadings.

9

C.  Plaintiff's Tortious Interference with a Contract Claim

Plaintiff alleges that Vincent "intentionally, maliciously, fraudulently, and without justification induced the University to cease performance of the Contract." Compl. ¶ 88 (docket no. 1).  Plaintiff also shanks this claim.

Under North Carolina law, to state a claim for tortious interference with contract, a plaintiff must allege (1) a valid contract between the plaintiff and a third person, conferring upon the plaintiff some contractual right against the third person; (2) defendant's knowledge of the contract; (3) defendant intentionally induced the third person not to perform her contract with the plaintiff; (4) defendant acted without justification and with malice; and (5) plaintiff suffered actual damages.  *Peoples Sec. Life Ins. Co. v. Hooks*, 367 S.E.2d 647, 649-50 (N.C. 1988) (citing *Childress v. Abeles*, 84 S.E.2d 176, 181 (N.C. 1954)). Because there is no valid contract, the first element is not satisfied, and Defendants are entitled to a judgment on the pleadings.

D.  Plaintiff's Promissory Estoppel Claim

Plaintiff's promissory estoppel claim, which was not argued in his brief, brings to mind Carl Spackler's analysis from the movie CADDYSHACK (Orion Pictures 1980): "He's on his final hole.  He's about 455 yards away, he's gonna hit about a 2 iron, I think."  North Carolina does not recognize affirmative claims of promissory estoppel; thus, Defendants are entitled to a judgment on the

10

pleadings. *See Dealers Supply Co. v. Cheil Indus.*, 348 F. Supp. 2d 579, 587 (M.D.N.C. 2004) (citing *Home Elec. Co. of Lenoir, Inc. v. Hall & Underdown Heating & Air Conditioning Co.*, 358 S.E.2d 539, 542 (N.C. Ct. App. 1987)).

Plaintiff tries to get around the slow play of his promissory estoppel claim by arguing that he should recover on a quasi or implied contract theory. *See* Pl.'s Opp'n at 13-14 (docket no. 14). Although other jurisdictions may hold that the student-university relationship is contractual in nature, *see, e.g., Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 35 (1st Cir. 2007); *Fellheimer v. Middlebury Coll.*, 869 F. Supp. 238, 242 (D. Vt. 1994); *Babiker v. Ross Univ. Sch. of Med.*, No. 98 CIV 1429 THK, 2000 WL 666342, at *6 (S.D.N.Y. May 19, 2000), this court must apply the consistent North Carolina precedents of *Brewer*, *Johnson*, and *Love* that policy manuals are non-binding.

E.  Plaintiff's Declaratory Relief Claim

Plaintiff's fifth and final claim for declaratory judgment, which was also not argued in his brief, can be disposed of with a hole-in-one sentence: no valid contract means no declaratory judgment. *See Shelton v. Duke Univ. Health Sys., Inc.*, 633 S.E.2d 113, 117 (N.C. Ct. App. 2006) (dismissing declaratory judgment claim because breach of contract claim failed). Accordingly, Defendants are entitled to a judgment on the pleadings.

11

## IV. Conclusion

For the reasons stated herein, Defendants are entitled to a judgment on the pleadings. Therefore, **IT IS RECOMMENDED** that the Defendants' motion for judgment on the pleadings (docket no. 10) be **GRANTED**. Furthermore, the Plaintiff's motion to strike elements of Defendants' pleadings (docket no. 12) and the Plaintiff's motion for status conference (docket no. 19) are **DENIED**.

_____
WALLACE W. DIXON
United States Magistrate Judge

May 19, 2009